07-1110 M E S Incorporated v. United States Postal Service Mr. Sullivan? Yes, Your Honor. Your Honor, please proceed. May it please the Court, the issue here before the Court is whether or not the determination of my client for failure to make progress was reasonable or unreasonable. And we submit that it was unreasonable because at the time of the termination, there still were existing design defects in the drawings, not permitting my client to continue and complete the project. We presented that evidence to the Board, and the Board ignored that in making its decision that we were... Well, the Board didn't ignore it, counsel, right? I mean, they actually said that you were entitled between 60 and 78 days, but they certainly did not ignore your evidence. No, they didn't ignore that part of it, Your Honor. You're right. And they did find 60 to 78 days. But what they did not consider was that there were still outstanding design defects at the time of termination that had not been corrected. But they said the problem is you didn't provide them, you meaning your client, did not provide them with specific evidence. It was your burden to carry on how many days of delay you ought to be entitled to. The client put forth a delay analysis showing delays and a number of days associated with each item. It was not required during the project to have a critical path schedule, which is a very specific type of progress schedule, which would show, as it went along, how it was being delayed. And when it got to the Board, it presented what it believed was a delay analysis showing the various delays. The defects at hand, they're still ongoing. The government never provided a corrected analysis. Well, that's still ongoing, right, because the contract is terminated. True. The government never provided a corrected analysis on two very important items, the concrete stairs and concrete ramp along the side of the building. Those things had to be installed before the client could then put forth the brick erection on the walls. But why couldn't you have shown how much delay was caused by that as of the date of the termination? Well, the client believed that it did, by putting forth the fact that it was being delayed, and there was no question that it was being delayed. And the government recognized it, at least the Board did, but it did not take it into account when it made its decision. The design was not complete and buildable at the time of the termination. That's undisputed, but the question seems to be whether you were thereby entitled to more than a 78-day extension of performance that the Board was prepared to award. As I understand it, the Board said you hadn't carried your burden of proof as to entitlement for any further extension of time, because you hadn't shown how many days it cost you as against the completion date. I don't understand why you couldn't have tried to prove that. The various items that were delayed were demonstrated to the Board. There was concrete delays, there was the structural steel, there were errors in the steel erection drawings that prevented the client. The contractor was spending a great deal of energy dealing with the errors in the plans and specifications. That doesn't seem responsive to a question directed to why you couldn't have shown proof to quantify how much additional extension you should get because of those defects. I understand the question, Your Honor. The evidence put forth to the Board was what the contractor believed would show that he had been delayed and impacted. It was an ongoing delay and impact. All of these errors weren't discovered on day one of construction. It continued throughout the entire project. He has the burden, I think it's hard to dispute, to show that there was delay. Secondly, it was caused by the government. Third, it delayed completion of the building by X days. The Board seemed to be concerned, both in the initial decision and on reconsideration, with the failure to prove the third part of that equation of how many days toward completion that that cost the building. There was testimony by the contractor as to how much time he was experiencing in the delays and how he had to go back and six times try to correct the concrete stairs to no avail. We're not talking about a claim that's based on wasted concrete because it hadn't been done more than once. We're talking about the downstream effects of a design defect or a series of, I guess, three main design defects. I still don't understand how you are responding to the failure of proof found by the Board other than to say that your client thought the proof was sufficient. Well, maybe so. Maybe he even reasonably so thought. The Board disagreed to show reversible error. You've got to say more than, well, my client thought it was enough. This Court has consistently recognized that a termination for default is a very drastic action and that when you terminate for default for failure to make progress before the completion date, that that is even more of a drastic action. The Postal Board seems to be saying to the Postal Service, we're going to overlook the fact that you have design defects and haven't presented a valid buildable design and we're going to allow you to terminate for failure to make progress. In the incident case, the contracting officer wasn't even going to give any time extension to the contractor. We're not reviewing the contracting officer's decision or rationale. They were disowned by the Board. The Board did a totally different kind of analysis. That's what's before us. You have to show that it's wrong. It seems to me you're still not responding to the Board suggestion that I saw in their opinions to the effect that there was a gap in your proof and there was no explanation of why you couldn't prove how many days of additional delay toward completion were the result of these three ongoing design defects. It was at the time that the schedule was put forth when the cure notice was issued to MDS. MDS had to assume that they would have immediate correction of those design errors from the Postal Service. Two months later, when it was terminated for default, it still hadn't received the... We understand that, and as far as we know, those final construction drawings were never done. That's correct. But that doesn't get us anywhere because you should have been able to quantify, at least as of the termination date, how many days of delay were caused by the ongoing default to provide a buildable design as to those three initially defective features. It was very difficult to quantify because we didn't have an answer as to when we would get those corrected drawings. Yeah, but if you assume you got them tomorrow, the day after you're doing your analysis, you should be able to do analysis that up to today, it's already cost us 23 days or whatever the number would be. But no such number was suggested, as I understand it, much less proven. And that seemed to be, in the board's view, a fatal deficiency in your evidence. I don't see what's wrong with that. I'm trying to understand the board. Why is the board off-base in faulting you for not proving what you could have proven up to the date of termination? That may have been standard, Your Honor, the burden of proof. But the government also had a burden of proof to justify its action as being reasonable, and that did not occur. Well, that's your opinion. The board had a different opinion. We have to review the board's decision deferentially, sir. It's a pretty steep hill for you to climb to convince us that we can justifiably find that the board's termination – pardon me, the Postal Service termination decision, as of May, I guess it was, was an unreasonable decision under all the circumstances. The board had gone through the evidence. It might not have been the best decision. There might have been other decisions that were better. But whether it was outside the range of decisions that would be considered reasonable is a much tougher proposition. I think what makes it unreasonable, Your Honor, is the fact that the board sifted through the evidence, and they said, well, maybe 60 days, maybe 78 days, but there was also evidence that 100 days could have been granted. If that had been granted back at the time when the cure notice was issued, it's possible that MDS would have proceeded and completed the project within the extended completion time. That's all speculative, I understand. Tell me briefly, what finally happened? Somebody else finished the half-built building? Yes, Your Honor, the Postal Service – What's the technical stake here? You're trying to recover a certain sum of money for the contractor? No, Your Honor, we don't want a default termination against us in the record. The Postal Service – No monetary relief this fall? Not at this point, Your Honor. What do you mean at this point? Well, if the default termination is overturned as being unreasonable, it's automatically converted to a termination for convenience, and the contractor would get its cost up until the date of termination. Well, what has the contractor gotten so far for its work up to the date of termination? It has not been paid in full. What's the gap? What's the shortfall? I don't know that, Your Honor. Can you give me a ballpark estimate? No, I really can't, Your Honor. I don't know what was outstanding at the time. What's the total value of the contractor? It was around $2 million, Your Honor. But there were progress payments all along? Yes, there were progress payments, and the Postal Service couldn't go back four years after the termination to complete the work. So no replacement contractor was hired for four years, you said? That's correct, Your Honor. That's my understanding. All right. Well, let's hear from the government and then some rebuttal. Thank you. Good morning. Welcome. Good morning. Please proceed. May it please the Court, I would like to turn first to counsel's suggestion that- Well, tell us first who you are. My name is Bondra Ely from the Department of Justice. Very well. Thank you. I'd like to turn first to counsel's argument that his client should somehow have been excused in this case through meeting his burden of proving excusable delay with a critical path analysis on the grounds that the contract did not require, as part of tracking progress, a critical path analysis per se. The contract in this case required a practicable progress chart, which is not a critical path analysis. It's the government's position that this is irrelevant, however. And that argument would be based on mega-constructors, a case where, again, the contractor was allowed to present as proof of progress a practicable progress chart, and the court still required a critical path analysis. Some proof that the overall project completion date was affected by delay. Well, of course, that's required by the case law, whether the contract requires an actual report so constructed and so labeled. But the board seemed to find that many of these deficiencies in the plans by the architects, etc., were on the critical path and did have downstream completion delay causing effects. I don't think we would dispute. There's not actually much evidence in the record of the specific eight delays that are identified on appellant's delay analysis summary having been on the critical path. There's certainly some suggestions of that effect in the testimony. The issue in this case really is a quantum issue, and as Your Honor correctly stated earlier, a failure to quantify the effect of alleged critical path delays on overall project completion date and on the time the contractor would have had to complete the contract. Do you know what money is at stake here? It's my understanding that no money is at stake, but I would defer to appellant. Well, Mr. Sullivan seemed to suggest that there were some unpaid actual costs, which his client would get if he prevailed on, in effect, expunging the default termination. But you don't know about the money. Usually, you'll also know about the money when you expect the attorneys to know. What's the real estate? Who's going to get what money? No, Your Honor. I have not seen anything in the record to suggest a monetary value being placed on any sort of delay claimed by the appellant. Do you have a view on whether this case is or could have been, at an earlier date at least, mediable? I have no view on that. Reading the details, it seemed to me there was massive fall in blame all over the place. The architects did a rotten job. The contracting officers did a rotten job. The contractor and several of the subs did a rotten job. All kinds of mistakes were made. The surveyor's report wasn't given to the contractor, and everything was in trouble from day one. So, there seemed to be so much fall all over the place here. It looked like maybe this is the kind of case that should have been compromised instead of litigated and re-litigated and re-litigated now for years. This is a building that was started in 1998. We're almost a decade later, and we're still quarreling over what may be a very small amount of money. It seems like a stupid waste of time and attorney effort, at least to me. Yes, Your Honor. This clearly was a troubled project from the very beginning. Why didn't the Postal Service just work out a compromise with the contractor? That is a question I never discussed with the Postal Service. We're left with the record that we're given. When you got this case, did you consider the possibility of mediation to resolve this case rather than a panel adjudicating the case? I did not, Your Honor, and the reason is that there are important issues at stake, namely the requirement that a critical path analysis be presented and that a litigant appropriately litigate its case from the beginning. A litigant's given one bite at the proof, at its burden of proof. It's not necessary for the post office to give it another as a legal matter. He's not asking for a retrial. He's asking for a different result based on the trial already held in front of the board. So I don't understand what you're saying. Based on the trial that was held before the board, given the lack of proof on the appellant's side, there was absolutely no room to mediate. What is this about the other bite at the apple? I don't understand. No relief requested to have a new trial back in front of the board or anywhere else. For us, I misunderstood your question. Are you saying at this point to mediate, or why was the decision earlier not made to mediate the case? Well, I asked both those questions, but I'm asking a different question. Your Honor, could you please repeat the question?  I don't understand how that could be so, because he's not asking for a retrial. He's asking for a different result based on the trial that was held. Well, he's not entitled to a different result based on the trial that was held. That's the issue. I think the appellant is complaining sort of after the fact about his own litigation strategy and the consequences of that. And the post office certainly should not be made to pay for what appears in retrospect to the appellant to have been a poor litigation choice in terms of even pushing this case before the board. What about his argument that you, you meaning the government, didn't provide relief ultimately? How can I come forward and say exactly how many delays this is going to cause me when the problem hasn't about subsided yet? How about that argument? I mean, couldn't you clearly figure out how many days it was up until that point or the next point or the next point, whatever the relevant date is? It's just a matter he can't give with particularity, and I think how long the ultimate delay is going to be because you guys haven't stopped delaying yet. Well, there are two answers to that. One is that the termination decision is based on events that have already occurred at the time the termination decision is made. And the other answer is a contractor's legal... So you're saying he should have presented the number of days of delay from whenever the delay started until the termination date. Yes. So he could have given a concrete number at that point. Yes. Understanding that the sort of unknown portion really would be locked off because a contractor's financial and legal interest in a contract obviously ends at the date of termination. So he really isn't... And in addition, you can't really expect for subsequent anticipated delays to excuse a prior inability or inability to make progress. They just don't have any sort of explanation for those subsequent anticipated delays. What's the important legal issue that barred you from mediating this case? Well, Your Honor, speaking for myself personally at the appellate stage, I think it's important to validate at this point that a contractor really does bear a burden of quantifying delay by the preponderance of the evidence and of showing that that delay... I don't have any doubt about that. There are already precedential decisions to that effect. What good would it do to add one more to the pile of cases? Well, the contractor in this case actually has raised a question about the proper interpretation of commercial contractors, for example, and is apparently making the claim that the fact that his contract did not require a critical path analysis absolves him of having to present one to the court. And the court and commercial contractors actually seem to be somewhat confused about the issue because it said repeatedly, although a critical path analysis may not be required based on that contract on which it required one to do a bar chart, for example. So there's an important point of clarification. You're saying I couldn't mediate the case because he's made an argument based on a misinterpretation, in my opinion, of a precedent. Therefore, I, the government, can't mediate this case because... because why? Well, Your Honor, honestly, we weren't asked to mediate this case, but we wouldn't mediate this case. This is a failure of proof. It's really the appellant's problem. If there are no further questions, the government is pleased to rest on this briefing. Thank you. For the reasons set forth in our briefing of this argument, we ask that the decision is worthily affirmed. Thank you. Your Honor, just one brief comment. In April of 1999, when we got the cure notice, the MES contractor went in with a schedule showing that it would do 180 days of time. It said it could reduce that to 120 days. The Postal Service rejected that and said complete by the original completion date. So there was evidence there of what the contractor wanted and the reasons for going forward to complete the job. All right. I think both counsel will take the case under review.